[Crim. No. 1154. Department One.—September 21, 1904.]

## THE PEOPLE, Respondent, v. WILLIAM JAMES PERRY, Appellant.

CRIMINAL LAW—BURGLARY—EVIDENCE—CHARACTER FOR HONESTY AND INTEGRITY—CROSS-EXAMINATION—MISCONDUCT OF DISTRICT ATTORNEY.—Upon a prosecution for burglary, where witnesses have testified to the defendant's general good character for honesty and integrity, it was not misconduct for the district attorney to ask the witnesses on cross-examination whether they had heard that he was charged with burglary and convicted of petit larceny in another county at a specified time, if the district attorney had reasonable cause to believe that such were the facts, although the facts were not proven in the case.

ID.—SCOPE OF CROSS-EXAMINATION—KNOWLEDGE OF ACCUSATION, OR OF ACTS INCONSISTENT WITH GOOD CHARACTER.—Where a witness has testified to the defendant's general good character, his opinion and the value of it may be tested by asking the witness on cross-examination whether he has ever heard that the person in question has been accused of doing acts wholly inconsistent with the character attributed to him, by asking him as to his knowledge of specific acts and with reference to such specific acts themselves for the purpose of overcoming the effect of his testimony upon direct examination.

ID.—MISCONDUCT AS TO QUESTIONS ASKED OUT OF COURT.—It was not misconduct for the district attorney to ask some of the character witnesses out of court if they had heard of the charge of burglary and conviction of the defendant of petit larceny; and he is not bound by the answers given by them when not on the witness-stand.

ID.—MISCONDUCT IN ARGUMENT TO JURY—INSTRUCTION OF COURT—PRESUMPTION.—It was not prejudicial misconduct for the district attorney to answer a question put to him in argument, why, if the defendant had been convicted of petit larceny, he had not charged it in the complaint, by stating that when the information was drawn he did not know the facts, where the court directed the jury not to pay the least regard to the matter one way or the other. It is to be presumed that they followed the instruction of the court.

ID.—FRIENDLINESS OF WITNESS FOR DEFENDANT—IMPEACHMENT—HARMLESS EVIDENCE.—Where a witness for the defendant stated on cross-examination that she was not very friendly with the defendant, the refusal of the court to strike out the testimony of the under-sheriff in rebuttal that he had seen the witness and other ladies, including defendant's wife, kiss the defendant during the trial in the courthouse corridor, which was admitted simply for

the purpose of showing the friendly feeling between the witness and defendant, cannot be ground for reversal, it being clear that it did not affect the substantial rights of the defendant.

ID.—DEGREE OF BURGLARY—INSTRUCTION.—An instruction that if the defendant entered the building in question in the night-time,—viz., between sunset of one day and sunrise of another day,—with the intent to commit larceny, the jury should find him guilty of burglary in the first degree, is correct, and in strict compliance with the statute.

ID.—EMPHATIC INSTRUCTIONS.—Instructions merely stating the law too emphatically furnish no ground for reversal.

ID.—BASELESS REQUESTS.—Requested instructions without evidence upon which to base the same were properly refused.

ID.—HARMLESS REFUSAL OF INSTRUCTION—REASONABLE DOUBT—DUTY OF EACH JUROR—INSTRUCTIONS GIVEN.—The refusal of a requested instruction that "if, after a consideration of the whole case, any juror should entertain a reasonable doubt, it is the duty of such juror entertaining such doubt not to vote for a verdict of guilty, nor to be influenced in so voting, for the simple reason that the majority should favor a verdict of guilty," is harmless, where the court instructed the jury that they must determine the case according to the evidence, and that no juror could conscientiously base his verdict upon any other consideration, and repeatedly and correctly instructed them upon the law of reasonable doubt.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. E. W. Wilson, Judge.

The facts are stated in the opinion of the court.

J. F. Quinn, for Appellant.

U. S. Webb, Attorney-General, C. N. Post, Assistant Attorney-General, and Otto C. Gregor, District Attorney, for Respondent.

VAN DYKE, J.—The defendant was convicted in the superior court of Humboldt County of burglary in the first degree and sentenced to five years' imprisonment. He moved for a new trial, which was denied, and the appeal is taken from the judgment, and also from the order denying a new trial. The questions presented by the appellant on the appeal are: 1. Misconduct of the district attorney; 2. Error in the admission of evidence; 3. Errors in giving and refusing certain instructions.

1. It seems the defendant formerly resided at Pinole, in Contra Costa County, and at the trial certain witnesses who resided there were produced by the defendant to give testimony as to his good character for "honesty and integrity as a law-abiding citizen." On cross-examination they were asked by the district attorney whether they had ever heard "that the defendant was charged with burglary in the city and county of San Francisco in February, 1899," and also whether they had heard "that he was convicted of petit larceny on February 20, 1899, before the police court of the city and county of San Francisco." When the first of this class of questions was asked an objection was made to the cross-examination, which was overruled by the court, but no exception was taken by the defendant to the ruling, and no further objection or exception was made in reference to such testimony. In *People* v. *Gordon,* 103 Cal. 573, it is said that a witness "having testified as to the defendant's general good character, his opinion and the value of it may be tested by asking the witness, on cross-examination, whether he has ever heard that the person in question has been accused of doing acts wholly inconsistent with the character which he has attributed to him." And in *People* v. *Mayes,* 113 Cal. 624, it is said: "While it is not permissible to give evidence of wrongful acts for the purpose of impeaching the witness, it is proper upon cross-examination of a witness who has given testimony, either for sustaining or impeaching the credibility of another witness, to question him with reference to his knowledge of specific acts, and with reference to the specific acts themselves, for the purpose of overcoming the effect of his testimony upon the direct examination." Such questions should not be asked by a district attorney in the absence of information warranting a reasonable belief on his part that the fact is as implied by the questions; in other words, the questions should not be asked for the mere purpose of getting before the jury an intimation that the defendant had theretofore been guilty of specific acts of misconduct; and where it is apparent that such is the only object of the questions it is undoubtedly misconduct on the part of the district attorney. We cannot, however, say that this appears to be the case here.

Appellant also complains that the district attorney on the

day before the trial asked some of these character witnesses if they had heard of the matter covered by the questions referred to. The district attorney, the same as an attorney for any party, may ask a witness while out of court and not under the binding obligation of an oath if certain matters are within his knowledge, and is not bound by answers that may be given when not on the witness-stand. The district attorney may have thought, and probably did think, that these witnesses, friends of the defendant, who had traveled a great distance to be of service to him, would not admit when not under oath any facts detrimental to his cause, and had a right on cross-examination, as already stated, to ask the questions referred to.

It is also complained that the district attorney was guilty of misconduct in his argument to the jury to the prejudice of the defendant. The record in reference to this matter is as follows: "In the argument of counsel for the defendant in discussing the questions asked by the district attorney of the witnesses produced by the defendant on good character, as to whether or not they had heard that the defendant was charged with burglary and convicted of petit larceny in San Francisco in 1899, he stated that no evidence was produced by the people to show that the defendant had in fact suffered a prior conviction of petit larceny, or been charged with burglary, and then and there stated to the jury that the cross-examination of said witnesses was merely a trick or scheme on the part of the district attorney to get evidence before the jury of facts that never existed. Thereupon the district attorney took exception to the remark of defendant's counsel, and the court thereupon stated to defendant's counsel that such evidence had been introduced under the ruling of the court, and that consequently its introduction could not be legitimately denominated a trick, and should not therefore be so characterized. Immediately after defendant's counsel asked the clerk of the court for the information herein, and upon receiving the same from the clerk, he then read the entire information and exhibited the same to the jury for the purpose then stated of showing that the prior conviction was not charged in said information, and that in the absence thereof it was presumed that none existed; and while so exhibiting said information to the jury, used substantially the following

language: 'If it is a fact that the defendant has suffered a prior conviction of petit larceny, why did not the district attorney charge such prior conviction in the information in this case.'

"During the closing argument of the district attorney the following occurred:—

"*Dist. Atty.*—Mr. Quinn has asked you the question why have we not charged a prior conviction of petit larceny in the information in this case. I will answer him. I am glad he has given me an opportunity to answer him, and I will tell you now the reason it was not charged was because when the information was drawn I was not in possession of the knowledge that he had suffered a prior conviction of petit larceny. That is the reason he was not charged and therefore I could not charge it afterwards.

"*Mr. Quinn.*—At this time I take an exception to that.

"*Dist. Atty.*—You have asked me the question why it was.

"*Court.*—I don't think it is proper on either side to discuss that question.

"*Dist. Atty.*—I don't intend to.

"*Court.*—As to whether or not there was a prior conviction and why if at all it does not appear to have been charged in the information in this case, either upon the one side or the other—neither upon the one side or the other, do I think it is a proper matter for the consideration of the jury.

"*Dist. Atty.*—I don't think so either, but inasmuch as he challenged me I thought it was fair. He placed me in a position that I am not willing to answer the challenge.

"*Mr. Quinn.*—I would like the reporter to note an exception to the remark made by the attorney.

"*The Court.*—I have directed the jury not to pay the least regard to that matter, one way or the other.

"*Dist. Atty.*—If you withdraw your statements made in connection with the same matter I will withdraw mine.

"*Mr. Quinn.*—I will take an exception, that is all."

Nothing prejudicial to the defendant's interests is here shown. Though the answer of the district attorney was called for by the question of defendant's counsel, it would have been better if the district attorney had not made the statement complained of. There was no evidence in the case to show that the defendant had ever been convicted of petit larceny,

and therefore defendant's counsel was justified in so arguing
to the jury. The district attorney in his answer to defendant's
counsel rather intimated, however, that as a matter of fact
there had been such a conviction. But the jury were instructed
by the court that the matter was not for their consideration,
and that they were not to pay the least regard to the matter
one way or the other. Presumably, they followed the instruc-
tion of the court in this regard. ,

From the fact that this court has in many cases been con-
strained to animadvert upon the conduct of district attorneys
in transcending the bounds of propriety in their zeal to obtain
a conviction, as is said in *People* v. *Ward,* 105 Cal. 340, "There
seems to be a disposition on the part of counsel for defendants
in all criminal cases, since the decision in *People* v. *Wells,*
100 Cal. 459, to count upon the alleged misconduct of the
prosecution as cause for a reversal." And the court there
remarks that the case referred to—to wit, *People* v. *Wells*—
was an extreme case, where the assistant district attorney had
willfully and persistently offered incompetent evidence to
prejudice the defendant so that the animus of the prosecution
was very apparent, and the court deemed it but just to stamp
it with the seal of disapprobation, and remarks that it is only
in extreme cases that the remedy there administered applies.
This case clearly does not fall within the class of cases referred
to by this court as extreme cases demanding any particular
consideration.

2. The witness Georgia Wood, who had testified in behalf
of the defendant, stated on cross-examination that she was
"not so very friendly" with him. In rebuttal the under-
sheriff, in answer to a question by the prosecution, testified
that during the trial, in the courthouse corridor, he met wit-
ness Georgia Wood and two other ladies, one being defendant's
wife, and they all, Georgia Wood included, then and there
kissed defendant. The court refused to strike out this testi-
mony on defendant's motion, on the ground that it was admit-
ted simply for the purpose of showing the friendly feeling
between the witness Georgia Wood and defendant.

Although defendant's counsel contends that it was error
to refuse to strike out this testimony, he is not very clear
whether this worked to the prejudice of the defendant or not,
as he says: "It would be very hard to judge just what effect

such testimony would have on the jury.'' This being the case, it is very clear that it did not affect the substantial rights of the defendant.

3. The contention of appellant with reference to the instructions is, that the first one given in behalf of the people is erroneous. This instruction is, that if the defendant entered the building in question in the night-time—that is, between sunset of one day and sunrise of another day—with the intent to commit larceny, the jury will find him guilty of burglary in the first degree. This is in strict compliance with the provisions of the code. (Pen. Code, secs. 460, 463.) The criticism upon instructions 11, 12, and 13 in behalf of the people seems to be that they stated the law on the subject ''altogether too strong,'' and were therefore ''harmful.'' But merely stating the law too emphatically furnishes no ground for reversal. Instructions 9, 10, 11, and 12, asked for by the defendant and refused by the court, were properly refused. There was no evidence upon which to base the same. Appellant's defense was, that he was drunk, and did not know anything about the crime. There was no evidence showing that the defendant received the stolen property from any other person ''knowing that it was stolen,'' or that he ''received the goods with the suspicion of the other's rightful ownership.'' Instruction 20, asked for by defendant and refused, is as follows: ''If, after a consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror so entertaining such doubt not to vote for a verdict of guilty, nor to be influenced, in so voting, for the single reason that a majority of the jury should be in favor of a verdict of guilty.'' Appellant contends that the refusal to give this instruction was error justifying a reversal, and relies upon *People* v. *Dole,* 122 Cal. 486,[1] in support of his contention. The court there says that the instruction correctly stated the duty of a juror and should have been given, but adds, ''if any juror needed an instruction upon this point, it was harmful to refuse it; if no juror needed the instruction, it would have been harmless to give it.'' But that case was not reversed solely or principally upon the refusal to give that instruction, but mainly upon other errors of the trial court referred to in the opinion

[1] 68 Am. St. Rep. 50.

in that case. In the later case of *People* v. *Rodley,* 131 Cal.
259, this court says on this subject: "Juries are impaneled
for the purpose of agreeing upon verdicts if they can consci-
entiously do so. They are admonished at each recess of the
court not to form an opinion as to the merits of the case until
it shall be finally submitted to them, and when it is so sub-
mitted it is the duty of jurors to deliberate and consult to-
gether with the view of reaching an agreement if they can
without violence to their individual understanding of the
evidence and instructions of the court. They should not be
lectured by the court to make them strong and steadfast in
their individual opinions; neither should they be exhorted to
reach an agreement, and while it is probably true that 'each
juror should decide the matter for himself,' yet he should do
so only after a consideration of the case with his fellow-
jurors, and he should not hesitate to 'sacrifice his views or
opinions of the case' when convinced that they are erroneous,
even though in so doing he defer 'to the views or opinions of
others.' " By an instruction previously given, however, in
the case at bar the court states to the jury, "This case, like all
other cases where crime is charged, should be determined by
the jury upon the evidence before them, and upon that alone,
and no juror acting conscientiously can base his verdict upon
any other consideration." And in one of the instructions
given at the request of the defendant the court stated to the
jury, "To warrant a conviction of the defendant he must be
proved to be guilty clearly and conclusively so that there is
no reasonable theory upon which he can be innocent when all
the evidence in the case is considered together." And again,
"You will not be warranted in returning a verdict of guilty
unless you find that the evidence excludes to a moral cer-
tainty every reasonable hypothesis except that of guilt, and
the conviction of guilt must flow naturally from the facts
proved, and not from any forced or constrained construction,
and must be consistent with all the facts, for if any one fact
is entirely inconsistent with the conclusion of guilt, your
verdict must be not guilty, and in cases of reasonable doubt
it is your duty to acquit." And again, "There must be in
your minds an abiding conviction to a moral certainty of the
truth of the charge derived from a comparison and considera-
tion of all the evidence, you must be satisfied with the truth

of the accusation against the defendant to a moral certainty and beyond all reasonable doubt, or your verdict must be not guilty.'' Similar instructions were repeated over and over, so that there can be no question that the case was so submitted to the jury as to guard in every possible way the rights of the defendant to a fair and impartial trial.

We fail to find any error justifying a reversal in this case.

Judgment and order appealed from affirmed.

Angellotti, J., concurred.

SHAW, J., concurring.—I concur in the opinion of Justice Van Dyke. In *People* v. *Howard,* 143 Cal. 316, I approved the concurring opinion of the chief justice, in which it was held error to refuse an instruction similar to defendant's instruction No. 20 here involved. At that time my attention had not been called to the case of the *People* v. *Rodley,* 131 Cal. 259, cited in the opinion of Justice Van Dyke. Upon further consideration of the question I am satisfied that the refusal of such an instruction should not be considered an error of sufficient importance to justify a reversal in any case where the jury are fully instructed that the verdict must be based upon the evidence alone. Each juror is required at the beginning of the trial to take an oath that he will well and truly try the matter in issue and a true verdict render according to the evidence. (Code Civ. Proc., sec. 604; Pen. Code, sec. 1046.) The proposed instruction assumes that an instruction from the court is necessary to inform a juror that this oath means that he is to act upon his own judgment, or that it is necessary to inform him that, after having taken such an oath, it would be a violation of it to render a verdict because a majority of the jury believed it to be according to the evidence, although he himself did not so believe. The defendant has no right, as matter of law, to be so safeguarded against the misconduct of the jurors. Section 1258 of the Penal Code provides that this court on appeal must disregard ''exceptions which do not affect the substantial rights of the parties.'' An exception which involves nothing more important than the failure of the court to protect the defendant against the very remote contingency that some juror may so misunderstand or disregard his oath and the other instructions, or the equally remote contingency that such a

juror would be prevented from so doing by an instruction such as that here involved, does not, in my opinion, affect the substantial rights of the defendant.