[Crim. No. 3709.   Second Dist., Div. One.   July 13, 1943.]

THE PEOPLE, Respondent, v. NOAH EDGAR McDANIEL, Appellant.

Maurice A. Gleason for Appellant.

Robert W. Kenny, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

DORAN, J.—Appellant was charged by information with the unlawful possession of a "preparation of codeine and apromorphine (opium derivatives) in violation of section 11160, Health and Safety Code of the State of California." A jury trial resulted in a verdict of guilty as charged and the

appeal is from the judgment which followed and from the order denying a motion for a new trial.

A careful reading of the reporter's transcript of the evidence reveals that one Mrs. Cloisea Harman, a witness for the plaintiff, testified that she was a deputy sheriff of Los Angeles County, that she visited what she described as a residence at 1226 East 58th Place in Los Angeles County. The following questions and answers then followed, viz.: "Q. Was anyone there when you got there? A. Yes, the lady of the house, Mrs. McDaniel, and a friend of hers. Q. The wife of this defendant? A. Yes, sir." The witness then testified further that she searched these premises and found the alleged opium derivatives in a small black satchel. The witness also testified "a doctor's kit and some instruments" were also found. The following pertinent record of the same witness's testimony is as follows: "Q. Now, I show you a glass jar or vial containing a lot of needles; I don't know how many, I will ask you to examine the jar and contents and state whether or not you have ever seen them before? A. I have. Q. When and where did you see those for the first time? . . . A. In the bag. Q. In the same bag which you have described to the jury which you found in the residence of this defendant? A. Yes. . . . Mr. Cochran (Deputy District Attorney): After you had found those objects, under the circumstances that you have related, did you later see the defendant in this case? A. Yes, sir. Q. When was it in reference to the time that you discovered the articles in his home? A. About a half hour later. Q. Where? A. At a paper box factory on Alameda, his place of employment."

The witness further testified that she, together with a deputy sheriff and one Mr. Brooks of the State Board of Medical Examiners then visited defendant's place of employment, at which time defendant was informed that he was to be taken to the sheriff's substation for questioning. Further testimony elicited from the same witness included an alleged confession in which defendant, it was asserted in substance, admitted in reply to questions, that he practiced as a physician and surgeon; that he used the hypodermic needles and syringe on his patients and the narcotics as well.

The record further reveals that the drugs described in the information were found to be as alleged.

With the foregoing record the plaintiff rested.

█ It is at once evident that the corpus delicti was not established. There was no evidence that defendant ever occupied the residence at 1226 East 58th Street. Reference by the witness to the so-called lady of the house as Mrs. McDaniel, the wife of the defendant, is no more than an assumption, and for all the record reveals, the information of the witness may have come from a crystal ball. The leading questions quoted from the transcript which include references to "residence of this defendant" and "in his home" are equally presumptuous and are not evidence, nor do the answers constitute evidence of anything. Nevertheless the trial proceeded. Defendant testified and in substance admitted possession; explained how the possession was obtained; denied knowledge of the nature of the substance and denied the confession.

█ A so-called character witness was called on behalf of defendant and on direct examination testified as follows: "Q. Mr. Postelle, what is your business or occupation? A. I am a laborer at the Pioneer Flintkote Roofing Company. Q. How long have you been working there? A. Since July, 1942. Q. Do you know whether or not the defendant was working there? A. Yes, he was when I came there. Q. Do you know his reputation around there where he was working for being a law abiding citizen? A. Yes. Q. Is it good or bad? A. Good."

Notwithstanding the obvious immateriality of the foregoing testimony and notwithstanding the well settled rule that cross-examination on an immaterial matter is improper, the following cross-examination was permitted. It is quoted by reason of its extraordinary character. "Q. Now you say his reputation is good for being a law abiding citizen, did you know him as a doctor? A. No. Q. Did you ever know that he practiced medicine on people? A. No. Q. Did you know that he had given people hypodermic injections of narcotics? MR. GLEASON: If the Court please, that is improper cross-examination. MR. COCHRAN: He has opened the gates, if the Court please. MR. GLEASON: Not within the issues. THE COURT: Objection sustained. MR. COCHRAN: I might state for the purpose of the record that I can prove the particular things I am asking. THE COURT: If you intend to bring in evidence of that kind ——. MR. COCHRAN: I certainly do intend to bring in that

evidence. THE·COURT: The objection will be overruled. MR. COCHRAN: Q. Did you know that about this defendant? A. No. Q. And that he performed abortions on women and had used narcotic drugs on them? A. No. Q. Did you know that he had admitted having a child by another woman to whom he was not married? A. No. Q. You didn't know that? A. No. Q. Did you know that he performed an abortion upon a woman and she died? A. No. Q. Did you know that the defendant was charged with a felony, a sex offense against his daughter? MR. GLEASON: Just a moment, I cite that as misconduct for the reason that counsel knows that issue has not been heard yet. It is coming up for trial. THE COURT: Objection over-ruled. A. No. MR. COCHRAN: That is all.''

Even assuming that the question on direct examination as to defendant's reputation had been a valid one, nevertheless the cross-examination recited above would have been improper. That it was highly prejudicial there can be no doubt. The questions alone were enough to produce such effect but, when the deputy district attorney asserted that, ''I can prove the particular things I am asking,'' followed by the assertion, ''I certainly do intend to bring in that evidence,'' the error was aggravated and the resultant injury, in the circumstances, was beyond recovery.

■ Reputation is not what a character witness may *know* about defendant. Reputation is the estimation in which an individual is held; in other words, the character imputed to an individual rather than what is actually known of him either by the witness or others. By no rule of evidence would plaintiff have been permitted to ''prove the particular things,'' referred to during the purported cross-examination.

In *People* v. *Burke,* 18 Cal.App. 72 [122 P. 435], at p. 88, appears the following:

· ''Appellant complains bitterly of the conduct of the district attorney in his cross-examination of the character witnesses for the defense. Those witnesses testified to the good reputation of defendant for peace and quiet and also for chastity. On cross-examination they were asked if they had not heard that defendant had made a practice of committing abortions, and having improper intercourse with women and of taking undue liberties with female patients. The court permitted these questions but sustained an objection to the question asked of one witness if he had not heard of the defendant having been

indicted by the grand jury of Lake County. No complaint is made of any question asked of the defendant himself. Under the authorities, the questions allowed by the court were properly permitted as affecting the weight of the testimony in relation to defendant's reputation. The district attorney did not claim anything as to the verity of the matters suggested or implied in his questions. The rule is that, on cross-examination of character witnesses, they may be asked as to specific reports concerning the trait of character involved, if they have a tendency to establish the bad reputation, although they may not be sufficient for that purpose.''

There is a vast difference between inquiring about reports, rumors and the like, of a character witness and questions as to what the witness *knows* of defendant.

The argument that defendant's counsel ''opened the gates'' is unavailing. An error that is prejudicial is no less so because it results from a lack of knowledge on the part of either counsel or both. Legitimate cross-examination does not extend to matters improperly admitted on direct examination. Failure to object to improper questions on direct examination may not be taken advantage of on cross-examination to elicit immaterial or irrelevant testimony. The so-called ''open the gates'' argument is a popular fallacy. ''Questions designed to elicit testimony which is irrelevant to any issue in the case on trial should be excluded by the judge, even though opposing counsel has been allowed, without objection, to introduce evidence upon the subject.'' (27 Cal.Jur. p. 74). ''It is a settled rule that cross-examination as to matters irrelevant to the issue may and should be excluded—even though, in some cases, testimony relative thereto was elicited upon direct examination—and that a party may not, under the guise of cross-examination, introduce evidence that is not competent within the meaning of the established rules.'' (27 Cal.Jur. p. 106).

The Supreme Court of the United States recently observed: ''We think that the trial judge should have stopped counsel's discourse without waiting for an objection. 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is

not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' '' *Viereck* v. *United States,* 318 U.S. 236 [63 S.Ct. 561, 87 L.Ed. ——, at p. ——].

Respondent relies on *People* v. *Perry,* 144 Cal. 748 [78 P. 284], and *People* v. *Mayes,* 113 Cal. 618 [45 P. 860]. The Perry case relies on the Mayes case and the Mayes case contains the following. ''Witnesses were also called on behalf of the defendant for the purpose of sustaining the testimony of other witnesses that the prosecution had attempted to impeach, and upon the cross-examination of these witnesses the prosecution was allowed to question them with reference to specific acts. While it is not permissible to give evidence of wrongful acts for the purpose of impeaching a witness, it is proper upon cross-examination of a witness who has given testimony, either for sustaining or impeaching the credibility of another witness, to question him with reference to his knowledge of specific acts, and with reference to the specific acts themselves, for the purpose of overcoming the effect of his testimony upon the direct examination.'' No authority is cited to support the above doctrine nor can any be found. The quotation concedes the inadmissibility of evidence of wrongful acts for the purpose of impeaching a witness, but approves of *questions* on cross-examination on the same subject. The inconsistency is obvious; it permits indirectly what is conceded to be prohibited directly.

The judgment and the order denying the motion for a new trial are, and each of them is reversed; and the cause is remanded for a new trial.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied July 28, 1943, and the following opinion was then rendered:

THE COURT.—The petition for a rehearing is denied.

It is urged in the petition for a rehearing that the evidence established the corpus delicti because, it is argued, it tends to show that the narcotic was in the possession of someone, which is all that the law requires.

The only evidence revealed by the record that may be regarded as tending to establish the corpus delicti is the following testimony of the witness Harman:

"Q. Will you describe those premises briefly? A. It is a residence. . . . Q. Did you make a search of or in and about the premises? A. Yes, we did. Q. What if anything did you find there, Mrs. Harman? A. We found a medical book and a doctor's kit and some instruments and I believe an appointment book." The witness testified in substance that the narcotics were in the doctor's kit.

The rule is accepted generally that prima facie evidence is sufficient to establish the corpus delicti, but evidence as casual, indefinite, uncertain and wholly lacking in particularities as the finding of something of, in or about the premises, falls far short of proving possession, even prima facie.

Respondent's petition for a hearing by the Supreme Court was denied August 12, 1943.