JOHNSON, J., Dissenting.
Defendant did not “open the door” to admission of his illegally obtained statements to the police by denying on direct examination he had “confessed” to the crime or by asserting he had told the police what had happened.
In Robinson v. Borg (9th Cir. 1990) 918 F.2d 1387 the Ninth Circuit held Robinson’s custodial statements to the police were obtained in violation of his Miranda rights and must be suppressed. The issue before us is whether those statements became properly “unsuppressed” because Ricardo H. Robinson mentioned them in his direct testimony at the retrial.
*284 Briefly, this is how this issue arose: In a nonresponsive answer to a question asked on cross-examination, Kim Bricker, a prosecution witness, blurted out: “[The police] played me a tape of you confessing.” (Italics added.) Robinson immediately objected. The trial court agreed the answer was nonresponsive, ordered the answer stricken and told the jury to disregard it. Robinson did not move for a mistrial. The court at this point warned Robinson about “opening the door” to things he might not want to come out because he might “be stuck with the response.” Later, in his own direct testimony Robinson told the jury Bricker “made a mistake” in saying the police “played a statement of my confession. It was no confession. I told them what the hell happened . . . In a sidebar conference with the court and the prosecutor Robinson explained he felt he had to say something about Bricker’s allegation he had confessed to the crime because “it was plastered all over the newspapers in the last three days” and he was concerned some of the jurors might have seen the reports. The prosecutor responded Robinson had “opened the door” and therefore he was free to ask Robinson about his statement to the police. The trial court agreed with the prosecutor Robinson’s statement to the police could come in because Robinson “brought it up.”
In People v. Disbrow (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272], which the majority concede is controlling here, our Supreme Court held: “. . . the California Constitution precludes use by the prosecution of any extrajudicial statement by the defendant, whether inculpatory or exculpatory, either as affirmative evidence or for purposes of impeachment, obtained during custodial interrogation in violation of the standards declared in Miranda and its California progeny.” (16 Cal.3d at p. 113, italics added.) The court did not add an exception for cases in which the defendant “brought it up.” Indeed, if the defendant in Disbrow did not “open the door” to questions about his statements to the police when he gave conflicting testimony at trial (id. at p. 105), it is difficult to imagine how a defendant could ever “open the door” to impeachment based on statements obtained in violation of Miranda.
Furthermore, even under current law which allows a defendant to be impeached with a statement obtained in violation of his Miranda rights such impeachment would not have been proper here. Robinson’s testimony was that his statement to the police was not a “confession.” The majority contend Robinson sought to mislead the jury by claiming he had not confessed to the police but instead had “told them what the hell happened.” But whether Robinson’s statement to the police was or was not a “confession” was totally *285 irrelevant to any issue in the trial.[1] The prosecutor’s proper response to Robinson’s testimony he did not make a confession was to object and move to strike on the ground the testimony was irrelevant. The prosecutor’s failure to make the proper response, however, did not “open the door” to evidence of Robinson’s statement to the police. There is no such rule of evidence as an “opening-the-door” rule which allows one party to impeach the other on an irrelevant subject. (People v. McDaniel (1943) 59 Cal.App.2d 672, 677 [140 P.2d 88].) As we explained in People v. Williams (1989) 213 Cal.App.3d 1186, 1189, fn. 1 [262 Cal.Rptr. 303], ‘“Legitimate cross-examination does not extend to matters improperly admitted on direct examination. Failure to object to improper questions on direct examination may not be taken advantage of on cross-examination to elicit immaterial or irrelevant testimony.’ ” (Quoting from People v. McDaniel, supra, 59 Cal.App.2d at p. 677.)[2]
I conclude, therefore, the trial court erred in allowing the prosecutor to question Robinson about his statement to the police. It necessarily follows the court erred in striking Robinson’s testimony when he refused to answer those questions.
The People argue even if it was error to allow the prosecutor to cross-examine Robinson about his statement to the police the error was harmless. The court struck Robinson’s entire testimony, including his testimony on cross-examination, and instructed the jury to disregard it. Therefore, the People reason, the jury did not consider Robinson’s incriminating statements to the police in its deliberations. I am not persuaded by this argument for two reasons.
I cannot accept the People’s assumption the jurors did not consider Robinson’s incriminating statements to the police because the trial court told *286 them not to. There are some things a jury just cannot ignore—among these are “the powerfully incriminating extrajudicial statements of a codefendant.” (Bruton v. United States (1968) 391 U.S. 123, 135-136 [88 S.Ct. 1620, 1627-1628, 20 L.Ed.2d 476]; accord, People v. Aranda (1965) 63 Cal.2d 518, 525 [47 Cal.Rptr. 353, 407 P.2d 265].) If the jury cannot perform the “mental gymnastic” of disregarding a codefendant’s statement implicating the defendant (Aranda, supra, at p. 525) how can they reasonably be expected to disregard the defendant’s own incriminating statements? The answer is, they cannot. (Cf. People v. Fletcher (1996) 13 Cal.4th 451, 465 [53 Cal.Rptr.2d 572, 917 P.2d 187] [reaffirming Aranda's holding jurors cannot be expected to obey instruction to disregard codefendant’s confession implicating the defendant].) Indeed, one of the reasons the Disbrow court gave for holding a defendant could not be impeached with his statement obtained in violation of Miranda was that “[t]o instruct a jury that they are not to consider expressions of complicity in the charged crime as evidence that the [defendant] in fact committed the charged crime, but only for the purpose of demonstrating that he was probably lying when he denied committing the charged crime, would be to require, in the words of Learned Hand, ‘a mental gymnastic which is beyond, not only [the jury’s] power, but anybody else’s.’. . .” (People v. Disbrow, supra, 16 Cal.3d at p. 112, citation omitted.)
More importantly, the People’s argument ignores the fact that by erroneously striking Robinson’s testimony, including his direct testimony, the trial court denied him the constitutional right to testify in his own defense. (Rock v. Arkansas (1987) 483 U.S. 44, 49 [107 S.Ct. 2704, 2707-2708, 97 L.Ed.2d 37]; People v. Robles (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710].) Such an error, if not reversible per se, requires reversal unless the court can say it was harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]; see People v. Cahill (1993) 5 Cal.4th 478, 487, 510 [20 Cal.Rptr.2d 582, 853 P.2d 1037].)
On the record before us, I am unable to say the error in striking Robinson’s testimony was harmless beyond a reasonable doubt.
The People’s case was strong, but not ironclad. For example, the People’s chief witnesses, Bricker and Bobby Ray Savage, were both admitted liars and generally unsavory characters whose testimony the jury might have disbelieved or accorded little weight. Savage, who was serving a life prison term for these same crimes, admitted he committed perjury at his own trial and that he had agreed to testify truthfully this time only after the prosecutor promised to request prison officials to allow him to remain in prison in San *287 Luis Obispo rather than be sent to a less desirable facility. Ms. Bricker’s bias against Robinson is plain from her testimony, even on the “cold record” before us. Furthermore, Patricia Worrell could have been mistaken in saying it was the Black male who threw the acid. The incident must have happened in a few seconds and, if Robinson’s testimony was credited, both men were in motion at the same time so that Ms. Worrell might not have accurately perceived which one threw the acid.
The fact Robinson returned from the trip to Los Angeles with a “terrible bum on his hand” does not necessarily mean Robinson threw the acid. Savage testified both he and Robinson got some of the acid on their hands and clothes. The roommate who testified Robinson asked him if he would throw acid on someone if he were paid to do it could not remember whether Robinson asked him this question before or after the attack on Ms. Worrell.
Robinson’s defense was based on his assertion he was an innocent bystander to Savage’s attack on Ms. Worrell. Robinson admitted giving Savage a ride to Los Angeles but claimed Savage told him they were going there for a drug buy. When they arrived at Ms. Worrell’s apartment, Robinson thought they were at the home of Savage’s drug connection. According to Robinson, when Ms. Worrell answered the door Savage pushed him out of the way and threw the acid.
Evidence was admitted at trial consistent with Robinson’s version of events. For example, Savage admitted at the time of the incident he did have a drug connection in Los Angeles and he asked Robinson to give him a ride to Los Angeles to buy cocaine.[3] Savage’s former employer testified Savage told him that he and Robinson had “driven to California, knocked on a young lady’s door; when she opened the door, Mr. Savage pushed [defendant] out of the way, threw acid in the young lady’s face [and] returned to Las Vegas.” Another witness, Herbert Brown, testified defendant called him a few days after Ms. Worrell’s murder in August 1980 and said “he was there when this crazy white guy threw acid in this woman’s face.” This conversation took place four months before defendant was questioned by police about the crime.
Although the evidence described above was not stricken it was insufficient to exonerate Robinson from liability for the crimes. Even if the jury believed Savage threw the acid on Ms. Worrell, Robinson could still be convicted as an aider and abettor and the jury was instructed on this theory. Given the state of the evidence, Robinson’s acquittal depended on his *288 creating a reasonable doubt in the jurors’ minds whether he knew Savage’s criminal purpose in going to Ms. Worrell’s home and acted with the intent to facilitate it. The only evidence which could have raised such a doubt was Robinson’s direct testimony and it was stricken.
For the reasons stated above, Robinson’s conviction should be reversed.
Appellant’s petition for review by the Supreme Court was denied May 21, 1997.

A confession is a statement encompassing all the elements of a crime which discloses the confesser’s guilt and excludes the possibility of a reasonable inference to the contrary (People v. Thompson (1990) 50 Cal.3d 134, 188, fn. 10 [266 Cal.Rptr. 309, 785 P.2d 857]; People v. Beverly (1965) 233 Cal.App.2d 702, 712 [43 Cal.Rptr. 743]) as contrasted to, say, an admission which is a recital of facts tending to establish guilt when considered with the remaining evidence in the case )(People v. McClary (1977) 20 Cal.3d 218, 230 [142 Cal.Rptr. 163, 571 P.2d 620]). However, the admissibility of a defendant’s statement to the police does not turn on whether the statement is labeled a “confession," an “admission" or something else. Therefore, evidence as to what label should be put on the statement was totally irrelevant. Furthermore, even if evidence defendant’s statement was a “confession" was somehow relevant to its admissibility, the admissibility of evidence is a decision for the trial court, not the jury, so there could be no reason for exploring defendant’s prejudicial statements to the police in front of the jurors.

It is obvious, of course, the prosecutor’s purpose in cross-examining Robinson about his statements to the police was not to prove the statements were a “confession” in the legal sense, but to get the incriminating contents of the statement before the jury by pointing out inconsistencies between those statements and Robinson’s testimony at trial. This is precisely what the Disbrow case prohibited. (People v. Disbrow, supra, 16 Cal.3d at pp. 105, 113.)

Savage also testified buying cocaine was not the “sole purpose” of their trip, implying the attack on Ms. Worrell was also a purpose of the trip.