Filed 8/10/16  P. v. Perez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063891 |
| v. | (Super.Ct.No. RIF1301369) |
| DANIEL HENRY PEREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.  Affirmed as modified.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Quisteen S. Shum and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Daniel Henry Perez sexually assaulted two young female members of his household — Jane Doe No. 1[1] (Doe 1) when she was between 15 and 18, and Jane Doe No. 2 (Doe 2) when she was between 9 and 10.  A jury found him guilty of:

Count 1:  Forcible oral copulation committed against Doe 1.  (Pen. Code, § 288a, subd. (c)(2)(A).)

Count 2:  Felony false imprisonment committed against Doe 1 (Pen. Code, §§ 236, 237, subd. (a)), as a lesser included offense of kidnapping for the purpose of oral copulation (Pen. Code, § 209, subd. (a)(1)).

Count 3:  Aggravated rape of a child committed against Doe 2.  (Pen. Code, § 269, subd. (a)(1).)

Count 4:  A forcible lewd act on a child committed against Doe 2.  (Pen. Code, § 288, subd. (b)(1).)

The jury also found a multiple victim special circumstance under the One Strike Law.  (Pen. Code, § 667.61, subd. (e)(4).)

Defendant was sentenced to a total of 32 years to life in prison, along with the usual fines, fees, and miscellaneous sentencing orders.

Defendant now contends:

---

[1]      The trial court ordered that all of the alleged victims be referred to by fictitious names.  (Pen. Code, § 293.5.)

1.  The trial court erred by excluding evidence that Doe 2 had a character trait of lying.  To the extent that defendant's trial counsel forfeited this contention, defendant contends that he received ineffective assistance.

2.  There was insufficient evidence of violence, menace, or fraud to support defendant's conviction for felony false imprisonment.

3.  The trial court violated Penal Code section 654 by imposing separate and consecutive sentences for forcible oral copulation and forcible false imprisonment.

The People concede the violation of Penal Code section 654.  Otherwise, we find no error.  Accordingly, we will modify the judgment so as to correct the violation and affirm as modified.

I

FACTUAL BACKGROUND[2]

A.    *Sexual Assault on Doe 1.*

Carmen and Carlos Perez had a house in Riverside.  They had five biological children.  In addition, they adopted defendant when he was a child.  They also took in and raised Doe 1 under an informal foster care arrangement.  Defendant was 19 years older than Doe 1.

---

[2]    We omit the evidence relating to sexual offenses allegedly committed against John Doe, who was Doe 2's brother, because the jury either hung or acquitted defendant on these counts.

3

Sometime between 2000 and 2003, when Doe 1 was between 15 and 18 years old, defendant was "play wrestl[ing]" with her in a grassy area behind the house. He was "very drunk." He got "a little bit too rough," so she went inside.

"[M]aybe an hour" later, defendant picked her up, put her on his shoulders, and carried her down a hallway and into her bedroom — a distance of approximately 30 feet. He threw her onto the bed. At first, she thought he was "still messing around." However, when he straddled her chest and pinned her arms down by kneeling on them, she became afraid. She screamed and fought.

He tried to put his penis in her mouth. She kept her mouth closed, so it touched her lips and "maybe went into [her] teeth, but not all the way in." When defendant realized that his penis was not all the way in, he said, "I'm sorry. I'm sorry." He got off her and left the bedroom. Doe 1 "went into the bathroom and . . . showered and cried."

After that, Doe 1 avoided defendant. She did not report the incident to the police at the time because the Perezes were good foster parents and she was afraid of being taken away from them. She reported it only after she heard that Doe 2 was going to go to the police.

B.      *Sexual Assault on Doe 2.*

The Perezes had numerous grandchildren, including Doe 2. Doe 2 lived with them from time to time. Defendant was 25 years older than Doe 2.

When Doe 2 was in fourth grade — i.e., in 2000 or 2001, when she was 9 or 10 years old — she and defendant were both in the living room. She was wearing a two-

4

piece bathing suit because she had been swimming in the pool. She was counting some money she had saved. She asked defendant if he had any change.

Defendant took a couple of steps, which brought him very close to her; he looked at her in a way that made her feel uncomfortable. She ran into the nearest bedroom. She tried to push the door closed, but he pushed it open. He pushed her onto the bed, on her back, then "he just pushed his whole body against [her]." She could feel his penis go into her vagina. She was not sure how he got her bathing suit out of the way. She started crying and told him that he was hurting her. His penis went in and out four or five times.

Doe 2 heard a noise, and defendant got off her. She ran into a bathroom. He came in, closed the door, and "took his pants off completely." He said, "If you look at it, I[']ll give you 25 cents. If you touch it, I'll give you 50 cents. If you put it in your mouth, I'll give you a dollar." When she heard her grandfather coming into the house, defendant left. The next day, she found "a bunch of change" on her bed.

Doe 2 did not immediately disclose the incident. At some point, however, she told Carmen that defendant had raped her.[3] Carmen told her, "[I]t did not happen . . . that stuff doesn't happen in our family." In 2008, when she was 16, she told her father's girlfriend, who told her father, who took her to the police.

---

**3**    Carmen denied this.

C.    *Defense Evidence*.

Six family members testified that they never saw defendant behave in a sexually inappropriate manner. They also testified that Doe 1 and Doe 2 never appeared to be uncomfortable around him.

II

EXCLUSION OF OPINION TESTIMONY

THAT DOE 2 HAD A CHARACTER TRAIT OF LYING

Defendant contends that the trial court erred by refusing to let him introduce evidence that Doe 2 had a character trait of lying. To the extent that his trial counsel forfeited this contention, he contends that he received ineffective assistance.

A.    *Additional Factual and Procedural Background*.

The People brought a motion in limine to "[e]xclude witnesses from improper character evidence attacking the victim's character for truthfulness. For example[,] the People seek to exclude statements made by defense witnesses that claim 'when [Doe 2] was younger she would lie about things.'"

Defense counsel made an offer of proof that one Vanessa Perez would testify that, when Doe 2 was an adolescent, she had falsely accused her own father of physical abuse. The trial court excluded this evidence under Evidence Code section 352, noting that it would "necessitate essentially a trial within a trial" as to whether Doe 2's father did actually physically abuse her.

Defense counsel then asked whether the trial court was excluding opinion testimony by Vanessa Perez "as to the veracity of [Doe 2]." The trial court replied,

6

"Under what Evidence Code section do you want that to come in?" Defense counsel said, "Just credibility, your Honor."

The trial court also excluded this evidence; it explained: "I still don't know under what Evidence Code it would come in. If you can point me to an Evidence Code number that says you can do what you're asking me to do, I mean, I recognize that the credibility of a witness is always at issue. [¶] . . . [¶] . . . And the Evidence Code sets forth ways under which you impeach a witness. Prior inconsistent statements is one. Crimes of moral turpitude is another. Character trait for lying is what I'm — I don't see that anywhere in the Evidence Code . . . . If you can show me where the Evidence Code says that comes in, I'd be happy to look at it."

The trial court then observed again that the particular incident of lying was remote and would require a trial within a trial. It said that it was willing to "revisit this issue" if defense counsel made an additional offer of proof.

B.    *Discussion*.

To answer the trial court's inquiry: The Evidence Code does allow a witness to be impeached by evidence of a character trait for lying. "Evidence Code section 780 provides that a jury may 'consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony . . . .' It outlines a number of ways in which a witness may be impeached, including '[h]is character for honesty or veracity or their opposites.' (Evid. Code, § 780, subd. (e).)" (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 750.)

7

Admittedly, Evidence Code section 1101 provides that "evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) However, it goes on to provide that "[n]othing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness." (Evid. Code, § 1101, subd. (c).) In any event, there are exceptions to the rule of Evidence Code section 1101, specifically including Evidence Code section 1103 (Evid. Code, § 1101, subd. (a)), which allows a criminal defendant to use evidence of the character or a trait of character of an alleged victim to prove conduct by the alleged victim in conformity with the character or trait of character. (Evid. Code, § 1103, subd. (a)(1).)

The admissibility of character to impeach, however, was not the trial court's only concern. It was also concerned that the only proffered instance in which Doe 2 had supposedly lied was both remote and subject to dispute. It indicated that it would reconsider if defense counsel made an additional offer of proof. These concerns relate to whether there was an adequate *foundation* for Vanessa Perez's opinion.

"'A witness who is not testifying as an expert may testify in the form of an opinion only if the opinion is based on his own perception.' [Citation.]" (*People v. Thompson* (2010) 49 Cal.4th 79, 130.) It did not appear that Vanessa Perez had any basis for her opinion *other than* the fact that Doe 2 had accused her own father of physical abuse. After all, if she did have any additional basis, defense counsel would have been offering

8

that as another specific instance of Doe 2's conduct.[4]  However, it would not be

reasonable to leap, from the fact that a person lied once, in adolescence, to the conclusion

that that person would lie as an adult, under oath.  In addition, it did not appear that

Vanessa Perez had personal knowledge that Doe 2's accusations against her father were

false; defense counsel indicated that this was something she "learned."  Thus, her opinion

was not rationally based on her own perceptions.

Defendant describes the proffered evidence as "reputation" rather than opinion

testimony.  (See Evid. Code, § 1100.)  That is incorrect.  "Reputation is not what a

character witness may *know* about [an individual].  Reputation is the estimation in which

an individual is held; in other words, the character imputed to an individual rather than

what is actually known of him either by the witness or others." (*People v. McDaniel*

(1943) 59 Cal.App.2d 672, 676.)  Reputation evidence is, in essence, hearsay, although it

is admissible under a specific hearsay exception.  (Evid. Code, § 1324.)  Here, defense

counsel did not propose to ask Vanessa Perez what she had heard about Doe 2 from

others; rather, she proposed to ask for Vanessa Perez's own opinion.  Indeed, defense

counsel frankly characterized it as "Vanessa's opinion."

---

[4]    At one point, defense counsel referred to "incidents" — plural — in which Doe 2 "would lie about certain things."  This was not sufficiently specific to constitute an offer of proof that there was actually more than one such incident.  (See *People v. Schmies* (1996) 44 Cal.App.4th 38, 53 ["an offer of proof must be specific"].)

9

Basically, defense counsel was trying to get around the trial court's ruling excluding evidence that Doe 2 had supposedly lied by recharacterizing it as evidence that Doe 2 was a liar. The trial court quite correctly saw no difference.

We therefore conclude that the trial court was required to exclude the proffered evidence as an improper lay opinion. It follows that, even assuming defense counsel's failure to cite Evidence Code section 780 fell below an objective standard of reasonableness, defendant was not prejudiced, because the trial court would have been required to exclude the evidence anyway.

III

THE SUFFICIENCY OF THE EVIDENCE OF VIOLENCE, MENACE,

OR FRAUD FOR PURPOSES OF FELONY FALSE IMPRISONMENT

Defendant contends that there was insufficient evidence of violence, menace, or fraud to support his conviction for felony false imprisonment of Doe 1.

"'""When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the

10

existence of every fact the trier could reasonably deduce from the evidence.'''

[Citation.]'' (*People v. Rangel* (2016) 62 Cal.4th 1192, 1212-1213.)

False imprisonment is "the unlawful violation of the personal liberty of another."

(Pen. Code, § 236.)  The elements of false imprisonment are that the defendant:

(1) intentionally and unlawfully restrained, detained, or confined another person and

(2) compelled the other person to stay or go somewhere against the other person's will.

(CALCRIM No. 1240 [felony false imprisonment], No. 1242 [misdemeanor false

imprisonment]; see also *People v. Fernandez* (1994) 26 Cal.App.4th 710, 716 [former

CALJIC false imprisonment instruction "sets forth a correct statement of the law."].)  If

false imprisonment is "effected by violence, menace, fraud, or deceit," it is a felony;

otherwise, it is a misdemeanor.  (Pen. Code, § 237, subd. (a).)  "'"Violence" . . . means

the exercise of physical force "greater than that reasonably necessary to effect the

restraint." [Citations.]' [Citation.] . . .  '"Menace" is an express or implied threat of

force.' [Citation.]" (*People v. Rogers* (2016) 245 Cal.App.4th 1353, 1368, italics

omitted.)

It could be argued (although the People do not do so) that defendant's acts of

picking Doe 1 up and carrying her down the hall to the bedroom constituted more force

than reasonably necessary to effect the restraint.  After all, defendant could have

restrained her wherever they already were;[5] he could even have attempted to orally

copulate her there.

---

[5]    Doe 1 testified that they "probably w[ere] in the kitchen area, but I don't remember."

As defendant points out, however, during the trip down the hall, Doe 1 thought he was still just play wrestling. While she was on his shoulder, and even when he threw her on the bed, she was laughing. This raises the question of whether defendant "compelled" her to go down the hall "against her will," or, conversely, whether she consented.

"When lack of consent is a necessary element of a crime, the fact the defendant employed fraudulent misrepresentations to induce the victim to consent to the proscribed act ordinarily does not vitiate the consent to supply the required element of nonconsent. [Citations.] However, the courts have distinguished between 'fraud in fact' from 'fraud in the inducement,' concluding the former will vitiate consent even though the latter does not. [Citation.] . . .

"'On the issue of consent, from an analytic standpoint, there are two kinds of fraud: fraud in the fact and fraud in the inducement. The distinction between the two is as follows: in fraud in the fact, the victim is fraudulently induced to consent to the doing of act X; the perpetrator of the fraud, in the guise of doing act X, actually does act Y; in fraud in the inducement, the victim is fraudulently induced to consent to the doing of act X and the perpetrator of the fraud does commit act X. [¶] Fraud in the fact, it has been said, vitiates consent. [Citation.] It appears equally reasonable to say that where there is fraud in the fact, there was no consent to begin with. Consent that act X may be done is not consent that act Y be done, when act Y is the act complained of. [¶] On the other hand, fraud in the inducement does not vitiate consent. [Citation.] "[T]he basic common law rule [is] that, unless there is statutory language to the contrary, whenever lack of consent is a necessary element of a crime, the fact that consent is obtained through

misrepresentation will not supply the essential element of nonconsent." [Citation.]'
[Citation.]" (*People v. Stuedemann* (2007) 156 Cal.App.4th 1, 6-7.)

Here, Doe 1 knew that defendant was picking her up and carrying her down the hall; what she did not know was that he intended to force her to orally copulate him. Strictly speaking, there was no fraud; defendant did not make any representations to Doe 1 about why he was carrying her down the hall. Nevertheless, he took advantage of the fact that they had been play wrestling earlier, and thus she was likely to misconstrue his purpose. Accordingly, the distinction between fraud in fact and fraud in the inducement is instructive. Doe 1 was fully aware that defendant was compelling her to go down the hall and into the bedroom; thus, her consent to this was valid.[6]

We therefore turn to the events in the bedroom. By sitting on Doe 1's chest and pinning her arms down with her knees, defendant used just enough force to keep Doe 1 in place. She testified that she "fought the whole time"; however, she did not testify that

---

[6]     In the interest of completeness, we note that Doe 1 did testify:

"Q. Did you want him to pick you up and take you in the back?

"A. Of course not."

However, the fact that she did not want him to does not change the fact that, once he did so, she consented. In any event, even assuming this was sufficient evidence of lack of consent, given her admissions that she was laughing and unafraid, there would be insufficient evidence that defendant *knew* that she did not consent. (See *People v. Mayberry* (1975) 15 Cal.3d 143, 153-158 [defendant is not guilty of rape if he is under a mistake of fact as to whether victim consents].) It would also raise an issue as to whether the trial court should at least have instructed on misdemeanor false imprisonment.

13

defendant used any force in response, and the fact that his weight was already on her chest and arms would seem to be sufficient to keep her under control.

However, this was not all that defendant did. He also tried to put his penis in her mouth. Although he was not able to get it all the way in, because she "had [her] jaw clenched," he did push it up against her mouth. This was a use of force against her person beyond what was necessary to effect her restraint.

We recognize that, on this view, the felony false imprisonment and the forcible oral copulation consisted of exactly the same acts. However, as we will further hold in part IV, *post*, and as the People concede, this means that, under Penal Code section 654, defendant can be punished for only one of these crimes. He can nevertheless be found guilty of both. (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537.)

We therefore conclude that there was sufficient evidence of violence.

IV

PENAL CODE SECTION 654

Defendant contends that the trial court violated Penal Code section 654 by imposing separate and consecutive sentences on count 1 (forcible oral copulation of Doe 1) and count 2 (forcible false imprisonment of Doe 1).

The People concede the error. We agree.

Penal Code section 654, subdivision (a), as relevant here, states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of

14

imprisonment, but in no case shall the act or omission be punished under more than one provision."

"'"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."' [Citation.]" (*People v. Capistrano* (2014) 59 Cal.4th 830, 885.)

"'"'A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.' [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.)

Here, defendant forcibly restrained Doe 1 so that he could accomplish his intent and objective of forcing her to orally copulate him. There is no evidence that he had any additional intent and objective. Hence, multiple punishment was barred. (*People v. Wall* (1979) 95 Cal.App.3d 978, 990.)

V

DISPOSITION

The judgment is modified by staying the two-year term imposed on count 2. This reduces the total sentence to 30 years to life in prison. The judgment as thus modified is affirmed.

15

The clerk of the superior court is directed to prepare an amended sentencing minute order and an amended abstract of judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. (Pen. Code, §§ 1213, subd. (a), 1216.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

HOLLENHORST

J.

MILLER

J.

16